## 58427. WATSON v. THE STATE.

SOGNIER, Judge.

Watson was convicted in Fulton County Superior Court of armed robbery. He appeals, contending the trial court erred (1) by denying his motion to suppress illegally seized evidence; (2) by admitting evidence of improper identification; (3) by denying his motion for a mistrial; (4) by allowing the state, over objection, to ask him a question requiring him to comment on the testimony of another witness; and (5) by having only the testimony of a state witness read, and not reading the testimony of appellant

on the same fact, in response to a question from the jury during their deliberations.

Just before closing time on the afternoon of December 4, 1978 a man armed with a pistol entered the back door of the Peachtree Branch of Standard Federal Savings and Loan in Atlanta. He immediately went behind the teller's counter and demanded money from the first teller he came to; she had closed her station and had no cash so he went to the other teller on duty and made the same demand. She opened her cash drawer and placed all the bills, including 10 ten dollar bills marked as "bait" money, in a bag carried by the robber. (Bait money is money that is marked, or listed by serial number, so it may be traced in event of robbery.) He then departed the bank. An alarm was tripped when the bait money was removed from the cash drawer, and the bank manager locked the back door and then called the police. The manager and both tellers described the robber as a black male, 25 to 30 years of age, about 5'8" tall, with a scarf or dickey over the lower part of his face. Mrs. George, who lived behind the bank, had noticed a white car enter the driveway adjacent to her house, turn around and park on Montclair Drive. A black man got out of the car and walked up the driveway past Mrs. George's house toward the rear of the store and the bank on Peachtree Street. When he came back he was running as hard as he could. Mrs. George described the car as a large white car with an off-color top, it had been in a wreck, and the right hand portion of the hood was pushed up enough to put a hand under it.

Based on the description of the robber and the car, police detective Cantrell was driving through different nightclub areas of Atlanta looking for the car described to him. About 10:50 p. m. he saw a car matching Mrs. George's description parked in front of a nightclub on Stewart Avenue. Cantrell called for backup assistance and put the car under surveillance. Watson came out of the club, got in the car and started backing up. The police blocked his car and Watson was ordered out of the car and placed under arrest. After being advised of his Miranda rights he was given a pat-down search. The police found $327 in cash in Watson's sock, including the 10 ten dollar

bills used by the bank as bait money. Watson was taken to the police station; his car was impounded and taken to the police station; the trunk was drilled open and all items were inventoried. The detectives making the inventory were also looking for evidence, although no warrant was obtained prior to the search of the car. The following day a lineup was conducted by the police with Watson's lawyer present. Watson was identified positively as the robber by the bank manager and both tellers from the bank. Several items of clothing, including the scarf or dickey worn by the robber, were found in Watson's car and were identified at trial by the bank manager and the two tellers. Mrs. George identified a photograph of Watson's car as a picture of the car she saw just before the robbery occurred.

1. The first enumeration of error need not detain us. Even if the evidence obtained in the search of the car had been excluded, the verdict of guilty was authorized by other evidence. Watson was identified positively as the perpetrator by the bank manager and the two tellers on duty; the bait money was found in his possession the same day the robbery occurred; and the car Watson was driving was identified as the car at the scene when the robbery was committed. Thus, introduction of the items found in the trunk of the car added nothing of substance to the state's case. Assuming, solely for the purpose of consideration of this enumeration, that the admission of such evidence was error, we believe it was harmless, as it was highly probable that the admission of such evidence did not contribute to the judgment within the contemplation of the "highly probable" test announced by the Supreme Court in *Johnson v. State,* 238 Ga. 59, 61 (230 SE2d 869) (1976). Thus, any error with respect to such evidence was harmless beyond a reasonable doubt. *Kirkland v. State,* 141 Ga. App. 664 (234 SE2d 133) (1977).

With regard to the arrest and search of Watson, we conclude from the facts set forth above that the police officers had probable cause to stop the car and arrest Watson. *Williams v. State,* 150 Ga. App. 852 (258 SE2d 659) (1979). Code Ann. § 27-207 (a) provides that an officer may arrest without a warrant "if the offense is committed in his presence, or the offender is endeavoring to escape, or for other cause, there is likely to be a failure of

justice for want of an officer to issue a warrant." Whether or not an arrest violated this statute depends on whether the officers had probable cause to make an arrest; that is, whether they had sufficient facts and circumstances within their knowledge, based on reasonably trustworthy information, sufficient to warrant a prudent man in believing that the defendant had committed an offense. *Bradford v. State,* 149 Ga. App. 839, 840-841 (256 SE2d 84) (1979), citing Beck v. Ohio, 379 U. S. 89, 91 (85 SC 223, 13 LE2d 142). We believe the officers had more than adequate information to meet this test. Once Watson was under arrest he was subject to a full search of his person. *Orr v. State,* 145 Ga. App. 459 (2), 463 (244 SE2d 247) (1978). As there was ample cause to arrest Watson and make the search, there was no error in overruling the motion to suppress. *Mitchell v. State,* 136 Ga. App. 658 (222 SE2d 160) (1975).

2. No objection was made to the identification testimony of the bank manager and two tellers when it was presented and it is well-settled that this court will not consider questions raised for the first time on appeal. *Sanders v. State,* 134 Ga. App. 825 (216 SE2d 371) (1975). Further, appellant presented no argument or citations on this issue in his brief; accordingly, it is considered abandoned. Rule 15 (c) (2). Rules of the Court of Appeals, August 1, 1979, Code Ann. § 24-3615 (c) (2); *Williams v. State,* 146 Ga. App. 543, 545 (246 SE2d 729) (1978).

3. Appellant next contends the trial court erred in denying his motion for a mistrial after the prosecuting attorney, through re-direct examination of a state witness, asked a question relating to something which occurred during a hearing on motions conducted outside the presence of the jury. We disagree. The testimony complained of was first presented by the defense counsel and appellant cannot now complain about questions by the prosecuting attorney relating to matters raised by the defense. Further, "[t]he extent of re-direct examination of a witness is left to the trial judge's sound discretion." *Hortman v. Gresham,* 137 Ga. App. 253 (2) (223 SE2d 285) (1976). Accord, *AMPCO Corp. v. Salet,* 147 Ga. App. 327 (2) (248 SE2d 700) (1978). Accordingly, no error was committed by denying the motion for mistrial.

4. The arguments relating to Enumerations 4 and 5 contain no reference to the record as required by our Rule 15 (c) (3) (i) and are therefore considered abandoned. *Scott v. State,* 229 Ga. 541 (4), 546 (192 SE2d 367) (1972); *Dunagan v. State,* 145 Ga. App. 68 (1) (243 SE2d 254) (1978).

*Judgment affirmed. McMurray, P. J., and Banke, J., concur.*

ARGUED SEPTEMBER 25, 1979 — DECIDED FEBRUARY 21, 1980 —

*Dennis S. Mackin,* for appellant.
*Lewis R. Slaton, District Attorney, Joseph J. Drolet, H. Allen Moye, Assistant District Attorneys,* for appellee.